902 F.2d 1385
 16 Fed.R.Serv.3d 464, RICO Bus.Disp.Guide 7461
 Ernest J. JACKSON; Pearl T. Jackson; Oahu Interiors, Inc.,
a Hawaii corporation; Oahu Industries, Inc., a Hawaii
corporation; A & B Equipment Co., a Hawaii corporation;
West Maui Lumber Corporation, a Hawaii corporation,
Plaintiffs-Appellants,
v.
BANK OF HAWAII, a State Chartered Banking Association, Denis
Kam and Allen Miyakado, Defendants-Appellees.
 No. 88-15271.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 15, 1989.
Decided May 2, 1990.
 
 Frances E. Komoroske, Cappello & Foley, Santa Barbara, Cal., Furutani, Komatsubara & Char, Honolulu, Hawaii, for plaintiffs-appellants.
 Dorothy D. Sellers, (argued), and Steven M. Egesdal, Carlsmith, Wichman, Case, Mukai & Ichiki, Honolulu, Hawaii, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before SNEED, HUG, and LEAVY, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Ernest J. Jackson, Pearl T. Jackson, Oahu Interiors, Inc., Oahu Industries, Inc. (collectively "OI"), A & B Equipment Co., Inc. ("A & B Equipment"), and West Maui Lumber Corp. appeal in their action against Bank of Hawaii ("Bank"), Denis Kam, and Allen Miyakado. Appellants sued under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1964(c) (1988), alleging a violation of 18 U.S.C. Sec. 1962(c). The district court denied appellants' motion for leave to amend the complaint and granted appellees' motion for summary judgment. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 In January 1977, OI received a $7.9 million construction contract to perform drywall construction work on the MGM Grand Hotel in Reno, Nevada. The Bank issued a $550,000 line of credit to OI for the project, secured by the contract proceeds, accounts receivable, OI's retentions, inventory, equipment, furniture, fixtures, and the Jacksons' personal guarantees and their stock in OI and A & B Equipment.
 
 
 3
 Between April and August of 1977, Jackson allegedly learned that MGM would not cover cost overruns for the project and believed that MGM was making unreasonable performance demands. He then allegedly notified Miyakado, an officer at the Bank, that he intended to abandon the project. Miyakado persuaded Jackson to finish the job. Instead of an estimated profit of $1 million, Jackson and OI allegedly incurred cost overruns of $2 million.
 
 
 4
 By 1980, OI was financially unable to complete its pending bonded projects. The Bank, which controlled significant loans by appellants, solicited and received further security from the Jacksons on their personal residence and other real property. Faced with large debts to the Bank and their bonding company, appellants signed two workout agreements in May 1982 that purported to outline plans to resolve their indebtedness to the Bank.
 
 
 5
 After unsuccessful litigation against MGM, appellants filed suit against appellees in Hawaii state court in September 1986, and in federal court in January 1987. In the federal court action, appellants repeated their state court claims and added claims under RICO, 18 U.S.C. Sec. 1962(c), and the National Bank Act, 12 U.S.C. Sec. 84(a)(2) (1988). The district court dismissed all but the RICO claim on May 4, 1987, and established a firm discovery completion deadline of June 30, 1987. In October 1987, the Bank renewed its motion to dismiss or for summary judgment. On June 3, 1988, appellants filed a motion to amend the complaint by adding claims under 18 U.S.C. Secs. 1962(a) and (b), and the court heard argument on both parties' motions on June 13, 1988. The district court denied appellants' motion for leave to amend the complaint and granted the Bank's motion for summary judgment. This appeal followed.
 
 II.
 JURISDICTION
 
 6
 Jurisdiction in the district court being proper under 28 U.S.C. Sec. 1331, we have jurisdiction over the appeal pursuant to 28 U.S.C. Sec. 1291. The notice of appeal, filed August 24, 1988, is timely as of the entry date of the final judgment, September 2, 1988, under Fed.R.App.P. 4(a).
 
 III.
 DISCUSSION
 
 7
 This appeal raises two issues: (1) whether the district court properly denied the appellants' motion for leave to file an amended complaint; and (2) whether the district court properly granted the appellees' motion for summary judgment. We analyze each in turn.
 
 
 8
 A. Appellants' Motion for Leave to Amend.
 
 
 9
 We review for abuse of discretion a district court's denial of a motion for leave to amend a complaint. "Unless this court has a definite and firm conviction that the district court committed a clear error of judgment, it will not disturb the district court's decision." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir.1986).
 
 
 10
 Under Fed.R.Civ.P. 15(a), after twenty days from the date when the initial complaint was served, "a party may amend [its] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Although the rule should be interpreted with "extreme liberality," United States v. Webb, 655 F.2d 977, 979 (9th Cir.1981), leave to amend is not to be granted automatically. A trial court may deny such a motion if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (listing these factors among others to be considered). Prejudice to the opposing party is the most important factor. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31, 91 S.Ct. 795, 802-03, 28 L.Ed.2d 77 (1971) (trial court "required" to take potential prejudice into account in deciding Rule 15(a) motion); 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d Sec. 1487 (1990).
 
 
 11
 1. Undue Prejudice to the Bank.
 
 
 12
 Appellees contend that permitting appellants to file an amended complaint will lead to three types of prejudice: the nullification of prior discovery, the burden of necessary future discovery, and the relitigation of a suit brought by its insurer regarding the liability of the two parties on appellants' claims.[1] Although the Bank does not specify what prior discovery would become null, additional discovery would have to be undertaken on appellants' new claims under 18 U.S.C. Secs. 1962(a) & (b). These additional claims advance different legal theories and require proof of different facts. See, e.g., Wilcox v. First Interstate Bank of Or., 815 F.2d 522, 529 (9th Cir.1987) (distinguishing elements of RICO claims under Secs. 1962(a) and (b) from claims under Sec. 1962(c)); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1396-97 (9th Cir.1986) (same). Although the appellants have offered to reimburse appellees for any additional discovery expenses the Bank incurs, their offer does not take into account the opportunity costs to the Bank when its officers spend time in the discovery process rather than engaging in their normal duties. See Priddy v. Edelman, 883 F.2d 438, 447 (6th Cir.1989) ("Putting the defendants 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.' ") (quoting Troxel Mfg. Co. v. Schwinn Bicycle Co., 489 F.2d 968, 971 (6th Cir.1973), cert. denied, 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974)).
 
 
 13
 Appellees also assert that they would be prejudiced by having to relitigate the insurance case brought by the Bank's insurer to determine whether it must indemnify the Bank in the appellants' lawsuit. Appellees contend that this case has been "extensively litigated," with several trial dates set, on the basis of the original complaint brought by Jackson and the other appellants. We conclude that appellees would be prejudiced because the proposed amended complaint, by adding claims under 18 U.S.C. Secs. 1962(a) and (b), alters the circumstances that determine the insurer's obligations to the Bank.[2] To permit the amended complaint would require appellees to relitigate a portion of their state court action with their insurer on the different theories raised by the section 1962(a) and (b) claims. The district court correctly determined, therefore, that the appellees would be unduly prejudiced by permitting the appellants to file an amended complaint.[3]
 
 
 14
 2. Undue Delay.
 
 
 15
 A second factor in determining whether the district court properly denied the motion for leave to amend is whether appellants unduly delayed in filing their motion. See, e.g., Parker v. Joe Lujan Enters., Inc., 848 F.2d 118, 121 (9th Cir.1988) (affirming district court's denial of motion to amend in part on ground of undue delay).
 
 
 16
 Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading. E.g., E.E.O.C. v. Boeing Co., 843 F.2d 1213, 1222 (9th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988); Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir.), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). Although appellants argue that the evidence of the Bank's representations, promises, and nondisclosures were not "fully flushed out" until September or October of 1987, they cite no facts or theories gleaned from the additional discovery period to support this contention.
 
 
 17
 Nor have the appellants otherwise justified their delay in moving to file an amended complaint. See, e.g., Parker, 848 F.2d at 121; Kates v. Crocker Nat'l Bank, 776 F.2d 1396, 1398 (9th Cir.1985). Appellants informed the court of their intention to file an amended complaint in March 1987, in May 1987, and in February 1988, but they delayed offering their amended complaint until May 1988. Even accepting appellants' arguments that they did not have all of the requisite facts until August 1987, did not fully analyze them until October 1987, and added new attorneys to represent them, the delay in filing an amended complaint from October 1987 to May 1988 is otherwise inexplicable and unjustified.[4]
 
 
 18
 The district court, therefore, properly denied appellants' motion for leave to file an amended complaint.
 
 
 19
 B. Appellees' Motion for Summary Judgment.
 
 
 20
 A grant of summary judgment is reviewed de novo. California Architectural Bldg. Prods., 818 F.2d at 1468. The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts. Fed.R.Civ.P. 56(e); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987). A mere disagreement about a material issue of fact is not in itself sufficient to preclude an award of summary judgment. "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." California Architectural Bldg. Prods., 818 F.2d at 1468 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). If the appellants cannot elicit material evidence through further discovery, summary judgment is appropriate. Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir.1988).
 
 
 21
 The district court granted summary judgment "based on the statute of limitations."[5] Appellants contend that the court erred when, in applying a four-year statute of limitations, it employed May 1982 as the date the limitations period commenced. That is the date appellants allege the appellees fraudulently induced them to execute a workout agreement. We must therefore determine whether the four-year rule announced by the Supreme Court in Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987), applies to this case, and if it does, whether it applies retroactively. The Court handed down this decision on June 22, 1987, in the midst of the parties' discovery on the RICO claim.
 
 
 22
 1. Date of Commencement of Limitations Period.
 
 
 23
 Appellants first argue that Agency Holding is irrelevant because they filed the original complaint in January 1987, within four years of the second predicate act which they claim was not May 1982. The parties, not surprisingly, sharply dispute when this second "act" occurred. Appellants here maintain that the second predicate act was their discovery of the Bank's misconduct, which was in October 1983.[6] They also assert that the Bank's wrongdoing was continuous and ongoing. Appellants cite no deposition testimony, document, or affidavit to support their claims. Nor does the record reveal any support. Both allegations, therefore, are unsupported by trial-worthy facts as required by Fed.R.Civ.P. 56(e).
 
 
 24
 Appellants' only proof is that the alleged second predicate act occurred in May 1982 when the parties entered into the workout agreements.[7] We therefore hold that the district court did not err in selecting this date.
 
 
 25
 2. Retroactive Application of Agency Holding.
 
 
 26
 We must now decide whether to apply Agency Holding retroactively. Appellants argue that it should so apply only when it favors permitting the plaintiffs' claim. See State Farm Mut. Auto. Ins. Co. v. Ammann, 828 F.2d 4, 5 (9th Cir.1987) (applying Agency Holding's four-year limitation period where district court barred plaintiffs' claim under three-year limitations period); Davis v. A.G. Edwards & Sons, Inc., 823 F.2d 105, 108 (5th Cir.1987) (per curiam) (one year); Tellis v. United States Fidelity & Guar. Co., 826 F.2d 477, 478 (7th Cir.1986) (four years). But see Lund v. Shearson/Lehman/Am. Express, 852 F.2d 182, 183 (6th Cir.1988) (holding that plaintiffs' claim is time-barred because of retroactive effect of Agency Holding ).
 
 
 27
 In this case, appellants argue that Hawaii's six-year statute of limitations was applicable prior to the Court's Agency Holding decision. Cases cited by both parties indicate that Judge Pence,[8] who ruled on this issue twice, changed his mind from 1985 to 1986 regarding the application of a one-year or a six-year time-bar. Compare Bush v. Rewald, 619 F.Supp. 585, 603-05 (D.Haw.1985) (most closely analogous statute is one year) with McCarthy v. Pacific Loan, Inc., 629 F.Supp. 1102, 1107 (D.Haw.1986) (most closely analogous statute is six years). Appellants argue that the later case established that the six-year rule controls and that Agency Holding should not be applied retroactively. Accordingly, they contend that to give Agency Holding retroactive effect would harm plaintiffs because it would foreclose their claim.
 
 
 28
 The Supreme Court has articulated the criteria for determining the retroactivity of a statute of limitations in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The Court held that a new statute of limitations should not be applied retroactively if: (1) the decision establishes a new principle of law either by overruling clear past precedent or constitutes a case of first impression; (2) the purpose and effect of the new rule would be defeated; or (3) equity counsels against such application because of hardship. Id. at 106-07, 92 S.Ct. at 355-56.
 
 
 29
 The first criterion is the most important. It is "the threshold test for determining whether or not a decision should be applied nonretroactively." United States v. Johnson, 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 (1982). "If this threshold requirement is not shown, the rule will be applied retrospectively without further consideration." Lund v. Shearson/Lehman/Am. Express, Inc., 852 F.2d 182, 183 (6th Cir.1988) (applying Agency Holding retroactively) (citations omitted).
 
 
 30
 Lund persuasively demonstrates that Agency Holding does not "represent[ ] a clear break from past precedent," given the wide split among the circuits in their application of a statute of limitations for RICO. 852 F.2d at 184. We accept the view that there was no clear past precedent generally for the statute of limitations under RICO prior to Agency Holding. Id.
 
 
 31
 Appellants nevertheless attempt to persuade us to the contrary on the grounds that the Hawaii federal district courts had erected such a clear precedent. We remain unpersuaded. A careful reading of McCarthy belies appellants' contention that it "established" the six-year rule for RICO. In McCarthy, Judge Pence treads carefully through the case law relevant to federal "borrowing" of state statutes of limitations. 629 F.Supp. at 1106-07. Given how quickly the RICO rule changed and the uncertainty Judge Pence expressed in McCarthy about how his fellow Hawaii federal district judges would treat the same issue, it would be inappropriate to say that McCarthy created a firm rule. See id.[9]
 
 
 32
 We, therefore, affirm the district court's decision to grant the Bank's motion for summary judgment because the statute of limitations barred appellants' original complaint.
 
 IV.
 CONCLUSION
 
 33
 For the foregoing reasons, we affirm the district court's rulings that denied appellants' motion for leave to file an amended complaint and granted appellees' motion for summary judgment.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 After appellants filed the original complaint, the Bank was sued by its insurer for a declaration that the allegations of the complaints in the state and federal court actions brought by appellants would not create any obligation to indemnify or defend the Bank
 
 
 [2]
 See First Ins. Co. v. State of Haw., 66 Haw. 413, 420, 665 P.2d 648, 653 (1983) (noting that the " 'duty to defend is determined at the time suit is brought and not at the conclusion of the litigation' ") (citation omitted)
 
 
 [3]
 The possibility also exists that the Bank's insurer may similarly be prejudiced. See 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d Sec. 1487, at 634 (1990) ("Possible prejudice resulting to a litigant other than the immediate adversary of the party seeking the amendment also may justify denying leave to amend.")
 
 
 [4]
 A third factor to consider in reviewing the trial court's decision is whether the proposed amended complaint would be futile. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Because we conclude that the lower court correctly denied appellants' motion on the above grounds, we need not reach the futility point per se. We note that this analysis is inextricably tied to the propriety of the trial court's granting appellees' summary judgment motion, which we discuss infra
 
 
 [5]
 The district court also expressed misgivings about whether Jackson had made out a substantive RICO claim: "[T]hat Mr. Jackson was ultimately disadvantaged as a result of [hard bargaining by the bank] does not necessarily make it conduct that is ... proscribed by the RICO statute." Although we have the authority to review the district court's ruling on the merits, see, e.g., Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 643 (9th Cir.1989); First Pac. Bancorp, Inc. v. Bro, 847 F.2d 542, 545 (9th Cir.1988), we decline to do so because the district court properly awarded summary judgment on the statute of limitations issue
 
 
 [6]
 In virtually every court document and appearance prior to this appeal, appellants claimed that the second predicate act occurred in May 1982. See, e.g., Original Complaint; Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss; Affidavit of Robert A. Smith, plaintiffs' attorney. Appellants contend on appeal, however, that the second predicate act, alleged to be the breach of these agreements, had to have occurred after May 1982 and that they did not learn of the Bank's alleged fraud until October 1983. In this manner, they hope to invoke the rule of this court that the time of a RICO "act" arises when the plaintiff " 'knows or has reason to know of the injury which is the basis of the action.' " State Farm Mut. Auto. Ins. Co. v. Ammann, 828 F.2d 4, 5 (9th Cir.1987) (citation omitted). We reject this suggestion because appellants present no material facts to support their allegation that they became aware of the Bank's purported RICO violation in October 1983
 
 
 [7]
 We pass no judgment on whether this act in fact constituted a RICO violation
 
 
 [8]
 The Honorable Martin Pence, Senior District Judge, District of Hawaii
 
 
 [9]
 Even if we were to construe Agency Holding as a clear break from past precedent, the appellants are unable to show that the purpose and effect of the new rule would not be defeated by our application of the four-year limitations period. We note that permitting an amended complaint in this suit would conflict with one aim of the Agency Holding rule, which was to "avoid intolerable 'uncertainty and time-consuming litigation.' " Agency Holding, 483 U.S. at 150, 107 S.Ct. at 2764 (quoting Wilson v. Garcia, 471 U.S. 261, 272, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985))