972 F.2d 1336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ARB, INC., a California Corporation; ARB Fabricated
Systems, Inc.; et al., Plaintiffs-Appellants,
v.
LUZ CONSTRUCTION, INC.; Manufacturers Hanover Trust Company
of California, a California corporation; et al.,
Defendants-Appellees.
 No. 91-55758.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 9, 1992.*
Decided July 16, 1992.
 
 1
 Before SNEED and D.W. NELSON, Circuit Judges, and ROLL, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Arb, Inc. and Arb Fabricated Systems, Inc. (collectively "Arb"), major subcontractors involved in a project to build a solar electricity generating station, brought this breach of contract, fraud, and civil RICO action against Luz Construction, Inc. ("Luz"), the general contractor, and Manufacturers Hanover Trust Co. ("MHT"), the bank which held in escrow the construction funds in dispute. The district court granted summary judgment for MHT, and Arb appeals.[1] We affirm.
 
 FACTS
 
 4
 Luz contracted to build Solar Electricity Generating Systems IX ("SEGS IX"), a $270 million power plant near Barstow, California. It hired Arb and Arb Fabricated as subcontractors to supply some of the materials used in construction. The money for the plant was paid into an escrow account held by MHT. Luz, MHT, the job owners, and several other companies were parties to the escrow agreement. Arb was not a party.
 
 
 5
 In July 1990, Arb ceased work on SEGS IX, apparently because it feared that it would not get paid. To alleviate Arb's concerns, Luz sent disbursement directions to MHT instructing it to pay Arb $1.3 million in past invoices, and to hold another $2.3 million in escrow against future invoices. The latter amount was to be paid on or after September 15, 1990, subject to approval of the invoices by Luz and by R.W. Beck & Associates ("Beck"), an independent engineering firm.
 
 
 6
 MHT apparently did not segregate this $2.3 million from the general $270 million escrow account. When Arb discovered this on September 4, it filed this suit against MHT and obtained a temporary restraining order the same day requiring MHT to hold the $2.3 million separate.[2] MHT complied on September 5. In the meantime, Luz disputed a number of Arb's billing invoices. As a result, Luz refused to approve those invoices, and MHT therefore did not pay Arb. The disputed money remained in escrow until March 12, 1991, when the district court ordered MHT to pay the money to Arb. MHT did so.
 
 
 7
 The district court then granted summary judgment in favor of MHT on Arb's remaining claims against it for consequential damages. The district court certified this order as a partial final judgment pursuant to Fed.R.Civ.P. 54, and Arb appealed.
 
 STANDARD OF REVIEW
 
 8
 We review a grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). We must determine whether, viewing the evidence in the light most favorable to Arb, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 DISCUSSION
 A. Proximate Cause
 
 9
 Under California law, recovery for breach of contract and fraud is limited to damages proximately caused by the allegedly wrongful act. Cal.Civ.Code § 3333. In this case, MHT's allegedly wrongful act was its failure to release to Arb the funds it held in escrow for Luz and the job owners. Before the district court, Arb sought to recover this money in payment for its work for Luz, and also sought consequential damages for lost business opportunities resulting from MHT's failure to provide the money in a timely fashion. The district court ordered MHT to disburse the disputed funds from escrow, and MHT has done so. On appeal, therefore, Arb is seeking to recover only consequential damages from MHT.
 
 
 10
 We conclude that Arb cannot possibly have suffered consequential damages as a result of MHT's actions. The escrow disbursement instructions required MHT to hold $2.3 million in escrow for payment sometime on or after September 15, 1990. As a result of the court order obtained by Arb, MHT reserved those funds in escrow on September 5, 1990. Because MHT in fact complied with the escrow instructions ten days before it was required to, Arb cannot have been injured by MHT's failure to segregate the funds immediately. As the district court concluded, "ultimately nothing really happened, the money went in, and there is, in my judgment, no proximate causation between the delay for the money going in and any damage." E.R. 144-45.
 
 
 11
 Arb advances two arguments to the contrary. First, Arb suggests that MHT's failure to segregate the funds in escrow in July made it more difficult for Arb to obtain financing between July and September. This argument is unavailing. Even were we to assume that MHT, contrary to the escrow disbursement direction, had a duty to segregate the funds beginning July 10, 1990, Arb's argument is undercut by the uncontradicted testimony of its own bank's loan officer. Mary Grider, a Vice President at Wells Fargo Bank and Arb's account executive, testified that no Arb financing was cancelled, delayed, or otherwise adversely affected by MHT's failure to segregate funds. Grider also testified that Arb never even approached Wells Fargo in an effort to obtain financing during this period. Arb has thus presented no evidence that it was injured in any way by MHT's failure to segregate the funds between July and September.
 
 
 12
 Arb's second argument is that it was injured by MHT's failure to release the funds to Arb on September 15, 1990. By this time, however, Luz had disputed Arb's invoices. The district court resolved this dispute and ordered MHT to disburse the funds to Arb on March 12, 1991. The problem with Arb's argument is that MHT acted properly in refusing to release the funds to Arb. The disbursement directions to MHT are unambiguous: MHT is "directed to reserve an additional amount, in escrow, pending [Luz's] audit and approval of ARB invoices in an amount not to exceed $2.3 million.... Outstanding ARB invoices will be paid from this disbursement subject to audit and approval by [Luz] and certification by R.W. Beck & Associates as to completion of all required deliveries ..." Although Arb now claims that it did not understand that MHT's authority to disburse the funds was conditional on approval by Luz and Beck (the job owner), Arb's own letter confirming its understanding of the escrow process belies that assertion. In that letter, Arb wrote that "[u]pon receipt of draw requests issued by Luz Construction, Inc. for work certified by R.W. Beck & Associates, Manufacturers Hanover will issue a check payable to Arb...." E.R. 261.
 
 
 13
 Because Luz disputed Arb's invoices, it did not approve the disbursement of funds from the escrow account to Arb. MHT therefore had no authority to release the escrowed funds, and indeed would have been in violation of the escrow agreement had it done so. Arb's redress, if any, for its claim that the funds were improperly withheld must come from Luz, not from MHT.
 
 B. Aiding and Abetting Fraud
 
 14
 Arb also appeals the district court's denial of its motion for leave to amend its complaint to state a cause of action against MHT for aiding and abetting Luz's fraud and RICO violations. Were Arb to prevail on an aiding and abetting theory, MHT would be jointly and severally liable for all damages caused by Luz's fraud, and therefore might possibly be found liable for Arb's alleged consequential damages. Pasadena Unified School Dist. v. Pasadena Federation of Teachers, 140 Cal.Rptr. 41, 49 (Ct.App.1977), disapproved on other grounds by County Sanitation Dist. v. Los Angeles County Employees Ass'n, 699 P.2d 835, 849 (Cal.), cert. denied, 474 U.S. 995 (1985).
 
 
 15
 The denial of leave to amend after a responsive pleading has been filed is reviewed for an abuse of discretion. Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.1990). The trial court may deny such a motion if amendment "would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." Id. We affirm the district court's denial of leave to amend because amendment would be futile in this case. See California Architectural Bldg. Prods. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir.1987) (futility alone is sufficient grounds to deny leave to amend), cert. denied, 484 U.S. 1006 (1988).
 
 
 16
 To state a claim for aiding and abetting liability under both state and federal law, Arb must plead three elements: (1) the existence of an independent primary wrong; (2) MHT's knowledge of that wrong; and (3) MHT's substantial assistance in the wrong. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1483 (9th Cir.1991); Pasadena Federation, 140 Cal.Rptr. at 49. Substantial assistance requires an affirmative act; a mere failure to disclose cannot be the basis for liability unless the party failing to disclose owes a fiduciary or statutory duty of disclosure. Franciscan Ceramics, 818 F.2d at 1472 (affirmative acts required under RICO); Armco Indus. Credit Corp. v. SLT Warehouse Co., 782 F.2d 475, 483-86 (5th Cir.1986) (same); La Jolla Homeowners' Ass'n v. Superior Court, 261 Cal.Rptr. 146, 158 (1989) (California law requires affirmative acts); 5 B. Witkin, Summary of California Law: Torts § 697, at 799 (9th ed. 1988) (same). Here, Arb has alleged that MHT failed to disclose that the disbursement directions it received from Luz were incomplete, and that MHT failed to disclose its alleged knowledge of Luz's intent to contest Arb's invoices. Even were we to conclude that MHT did omit this information,[3] such nondisclosure does not give rise to a fraud claim.
 
 
 17
 Arb seeks to avoid the general rule that nondisclosure is not actionable by asserting that a fiduciary relationship existed between it and MHT. Specifically, Arb claims that MHT's actions as of July 1990 somehow created a separate escrow agreement obligating MHT to hold the $2.3 million solely for the benefit of Arb.[4] There is no evidence of any such agreement, either in documents written by MHT or in the surrounding circumstances. MHT did only two things with regard to the $2.3 million to be set aside for Arb. First, it confirmed on July 10 that it had received disbursement directions from Luz which stated that MHT should release the money to Arb after Luz and Beck had approved Arb's invoices. Second, Mr. Litts, an officer of MHT, met with Arb on July 18 to explain the terms of the Luz escrow. The $2.3 million was part of the Luz escrow, and both of these acts were taken in MHT's capacity as escrow holder for Luz. Merely receiving and explaining disbursement directions for an existing escrow simply does not create a new escrow with different parties and different terms governing the same funds. See Peterson Development Co. v. Torrey Pines Bank, 284 Cal.Rptr. 367, 376-77 (Ct.App.1991) (whether escrow is created must be determined by reference to traditional purposes of escrow; courts should avoid "loose characterization" of relationships as fiduciary); Price v. Wells Fargo Bank, 261 Cal.Rptr. 735, 739-41 (Ct.App.1989) (most financial relationships are not fiduciary in nature).
 
 
 18
 In short, because MHT owed no fiduciary duty to Arb, its failure to disclose its alleged knowledge in July of Luz's dispute with Arb cannot constitute "substantial assistance" sufficient to hold MHT liable for aiding and abetting Luz's fraud.[5] Because MHT's actions did not constitute aiding and abetting a fraud, and because they were not the proximate cause of any consequential damages Arb may have suffered, we affirm the judgment of the district court.[6]
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Arb's claims against Luz were dealt with separately in the district court, and are not before us today
 
 
 [2]
 Arb also filed suit against Luz on September 4, alleging breach of contract, fraud, civil RICO, and a number of ancillary claims
 
 
 [3]
 As noted above, the disbursement directions themselves make it quite clear that Luz and Beck must approve all invoices before money could be paid to Arb from the escrow account. Arb received a copy of these directions, and in fact recognized in its letter to MHT that such approval was necessary. It is far from obvious, therefore, that MHT has failed to disclose the need for Luz to approve the release of funds
 
 
 [4]
 Arb also claims that MHT owed it a fiduciary duty arising from the original escrow agreement. No such duty existed. Generally, only parties to an escrow stand in a fiduciary relationship with the escrow holder. Hannon v. Western Title Ins. Co., 260 Cal.Rptr. 21, 24 (Ct.App.1989). Arb was not a party to the escrow agreement. Nor is Arb a third-party beneficiary entitled to enforce the terms of the agreement against MHT. Cal.Civil Code § 1559 provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him." (emphasis added). California courts have determined that whether a plaintiff is a third-party beneficiary to a contract depends on "whether an intent to so benefit the third person appears from the terms of the agreement." Schonfeld v. Vallejo, 123 Cal.Rptr. 669, 682 (Ct.App.1975). In this case, not only is no mention made in the escrow agreement of Arb or subcontractors in Arb's position, but the agreement expressly provides that it is not made for the benefit of third parties. Agreement p 8.10
 
 
 [5]
 We assume for purposes of this appeal that there is in fact a viable fraud claim against Luz. We note, however, that the district court has apparently granted summary judgment in favor of Luz on the fraud and RICO claims. If there is no underlying fraud, of course, MHT cannot be liable for aiding and abetting
 
 
 [6]
 We need not consider the applicability of Cal.Code Civ.Proc. § 1974 or MHT's claim that Arb's alleged damages are too speculative