**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERISOURCEBERGEN CORPORATION,
a New Jersey corporation, dba
Bergen Brunswig Corporation, aka
BBC; AMERISOURCEBERGEN DRUG
CORPORATION; MEDICAL INITIATIVES,
INC., aka Oncology Supply; ASD
SPECIALTY HEALTHCARE, INC.,
            *Plaintiffs-Appellants,*

            v.

DIALYSIST WEST, INC., an Arizona
corporation,
            *Defendant-Appellee,*

            v.

AMERX INC., a Florida corporation;
CSG DISTRIBUTORS, a Tennessee
company; PREMIER MEDICAL
DISTRIBUTORS, INC.,
            *Third-party-Defendants.*

No. 04-15595

D.C. No.
CV-02-01472-JWS

AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
John W. Sedwick, District Judge, Presiding

Argued and Submitted
November 18, 2005—San Francisco, California

Filed March 22, 2006
Amended April 24, 2006
Second Amendment October 6, 2006

Before: Jerome Farris, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

17311

Opinion by Judge Farris;
Dissent by Judge Tashima

## COUNSEL

Morton R. Branzburg and Andrew O. Schiff, Klehr, Harrison, Harvey, Branzburg, & Ellers LLP, Philadelphia, Pennsylvania, for the plaintiffs-appellants.

Dan L. Bagatell and Joel W. Nomkin, Perkins Coie Brown & Bain P.A., Phoenix, Arizona, for the defendant-appellee.

## OPINION

FARRIS, Circuit Judge:

### I.  FACTUAL AND PROCEDURAL HISTORY

On August 2, 2002, AmerisourceBergen Corporation[1] brought suit against Dialysist West, Inc. alleging that Dialysist West breached a sales agreement concerning the sale of the drug Epogen S40. Following its determination that 50% to 100% of the Epogen it purchased from Dialysist West was counterfeit, AmerisourceBergen withheld payments due Dialysist West on non-Epogen drug sales. On March 18, 2003, Dialysist West filed a counterclaim demanding that AmerisourceBergen pay the approximately $2.2 million it owed for the non-Epogen products Dialysist West had shipped to AmerisourceBergen. On the same day, Dialysist West also filed an Epogen-related, third-party complaint against pharmaceutical distributors AmeRx Inc., CSG Distributors, and Optia Medical. On April 21, 2003, CSG Distributors filed a third-party complaint against Premier Medical Distributors Inc., and on July 14, 2003, AmeRx filed a third-party complaint against three more Epogen distributors.

---

[1]AmerisourceBergen Corp. succeeded Bergen Brunswig Corporation as the plaintiff-appellant in this case.

On May 30, 2003, AmerisourceBergen filed a reply to Dialysist West's counterclaim conceding that it had not paid for the non-Epogen products (including Procrit) and that these products were genuine. On July 22, 2003, Dialysist West filed a motion for judgment on the pleadings and for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) on the $2.2 million counterclaim. On August 25, 2003, AmerisourceBergen filed a cross-motion for leave to amend its complaint and its reply to Dialysist West's counterclaim, changing its tack by alleging that Dialysist West had also sold it counterfeit Procrit. On January 6, 2004, the district court granted Dialysist West's motion for judgment on the pleadings, denied AmerisourceBergen's motion for leave to amend, and certified the judgment as final under Rule 54(b). On March 3, 2004, the district court denied AmerisourceBergen's motion to stay execution of judgment and AmerisourceBergen filed this appeal on March 24, 2004.

## II.   JURISDICTION & STANDARD OF REVIEW

We have subject matter jurisdiction over the final decision of the district court pursuant to 28 U.S.C. § 1291. We review the district court's interpretation of Arizona contract law de novo. *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005). The denial of AmerisourceBergen's motion for leave to amend is reviewed for abuse of discretion. *See Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). The district court's Rule 54(b) certification of the judgment is reviewed de novo to determine if it will lead to "piecemeal appeals" and for "clear unreasonableness" on the issue of equities. *See Gregorian v. Izvestia*, 871 F.2d 1515, 1519 (9th Cir. 1989). The district court's refusal to stay enforcement of the judgment under Rule 62(h) is reviewed for abuse of discretion. *See MacKillop v. Lowe's Mkt., Inc.*, 58 F.3d 1441, 1446 (9th Cir. 1995).

## III.   DISCUSSION

### A.   Setoff of Epogen Claims

AmerisourceBergen claims that the district court erred in finding that it could not set-off the approximately $2.2 million it owes Dialysist West for non-Epogen, pharmaceutical purchases against the estimated $8 million judgment it seeks from Dialysist West for selling AmerisourceBergen counterfeit Epogen. AmerisourceBergen bears the burden of establishing that it is entitled to either a legal or equitable setoff of its claims. *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996).

**[1]** AmerisourceBergen and Dialysist West agree that section 47-2717 of the Arizona Commercial Code applies. The Arizona statute, a codification of section 2-717 of the Uniform Commercial Code, provides:

> The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

Ariz. Rev. Stat. § 47-2717 (2006). A plain reading of the statute indicates that a party may not set-off a contractual claim against a debt on a separate contract. *See ITV Direct, Inc. v. Healthy Solutions, LLC*, 379 F. Supp. 2d 130, 133 (D. Mass. 2005) ("Section 2-717 is not a general setoff provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer.").

**[2]** AmerisourceBergen concedes that the contracts for sale of Epogen and the other drugs were separate contracts. But because the Vendor Agreement signed by Dialysist West permits AmerisourceBergen to return any goods to Dialysist West for "full credit," AmerisourceBergen believes it was justified in applying the credit it held for the counterfeit Epogen

purchases against its outstanding debts. AmerisourceBergen's reading of the Vendor Agreement is strained.[2] The Vendor Agreement does not indicate that AmerisourceBergen can off-set one deficient transaction against another transaction. Rather, as the district court pointed out, "[t]he plain language of the provision links the allowable credit to the specific returned goods." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, No. CIV-02-1472 PHX JWS, slip op. at 13 (D. Ariz. Jan. 6, 2004).

**[3]** The contract clause is not ambiguous, as Amerisource-Bergen argues. The intention of the parties is clear: to create a return policy by which AmerisourceBergen can fully recover for returned goods that do not meet its standards. *See Smith v. Melson, Inc.*, 659 P.2d 1264, 1266 (Ariz. 1983) (stating that a contract should be read in light of the intentions of the parties as reflected in the language and circumstances of the contract); *see also Echo, Inc. v. Whitson Corp.*, 52 F.3d 702, 705 (7th Cir. 1995) (holding under Illinois law that in applying UCC section 2-717, purchase orders cannot be set-off against damages buyer sustains as result of breach of related distributorship agreement).

**[4]** Furthermore, AmerisourceBergen has provided no evidence that it was the pattern or practice of the parties or industry custom to offset deficiencies in one sales contract by giving discounts or "credit" on other sales contracts. *See Mohave Valley Irrigation & Drainage Dist. v. Norton*, 244 F.3d 1164, 1166 (9th Cir. 2001) ("According to the UCC, to determine whether a contract's terms are ambiguous, courts may only consider evidence of course of dealing, trade usage, or course of performance."). The district court did not err in holding that AmerisourceBergen had no legal right to set-off its Epogen claims against its other contractual claims.

---

[2]The relevant contract clause reads: "BBC may, at its sole option, return all or any part of any product received from Vendor and receive full credit for all returned items."

**[5]** AmerisourceBergen argues that even if it is not entitled to offset its debt under section 47-2717 of the Arizona Commercial Code, Dialysist West's insolvency affords it an equitable right of setoff under Arizona common law. But AmerisourceBergen's claim to equitable setoff is preempted by 47-2717. Arizona's Commercial Code provides that "principles of law and equity" apply "unless [displaced] by the particular provisions of this title." Ariz. Rev. Stat. § 47-1103 (2006); *see also John Deere Co. v. First Interstate Bank*, 709 P.2d 890, 894 (Ariz. 1985). Although no Arizona court has ruled on whether section 47-2717 preempts a common law claim for setoff, several federal courts have indicated that the corresponding UCC section preempts equitable setoffs. *See ITV Direct*, 379 F. Supp. at 133; *Carlisle Corp. v. Uresco Const. Materials, Inc.*, 823 F. Supp. 271, 275 (E.D. Pa. 1993). As the court convincingly reasoned in *Carlisle*, because the UCC "specifically provides for set-offs in particular circumstances . . . we must conclude that the Code drafters, and the state legislatures that have adopted the Code, meant to displace common law set-off." *Carlisle*, 823 F. Supp. at 275. It is apparent that the Arizona legislature intended section 47-2717 to supercede the common law of setoff. The district court did not err in denying AmerisourceBergen's common law claim for equitable setoff.

## B.    Denial of Leave to Amend

**[6]** AmerisourceBergen appeals the district court's decision to deny it leave to amend its reply pursuant to Federal Rule of Civil Procedure 15(a).[3] Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so requires." *See*

---

[3]We need not decide whether the district court also erred in denying AmerisourceBergen leave to amend its complaint. *See* 10 *Moore's Federal Practice*, § 54.28[3][b], at 54-109 (3d ed. 2005) ("On appeal of a judgment properly entered under Rule 54(b), the court of appeals may review any matter implicated by the judgment, but should not reach beyond the bounds of the judgment . . . .").

*Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *Id.* at 758; *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

AmerisourceBergen filed its leave to amend on August 25, 2003, nearly fifteen months after it first learned that counterfeit Procrit was in the marketplace and three months after entering a reply where it conceded that the products for which it had not paid Dialysist West, including Procrit, were genuine. In the dissent, Judge Tashima emphasizes the district court's filing of a pretrial scheduling order on July 7, 2003, which extended the period for filing a motion to amend from June 2, 2003 to December 2, 2003; and the non-expert discovery cutoff date from August 1, 2003 to February 2, 2004.[4] Because AmerisourceBergen's motion for leave to amend was filed before the cutoff date set by the court, Judge Tashima concludes that the motion was "presumptively timely" and the district court therefore abused its discretion in denying the motion. (Dissent at 17332; *citing Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994)).[5]

---

[4]In a joint motion to extend the dates set in the pretrial schedule, counsel for the parties argued that more time was necessary because of disputes regarding what materials should be produced and the complications that arose in the case from the entry of third parties. Joint Motion To Extend Dates in Pretrial Schedule, *Bergen Brunswig Corp. v. Dialysist West, Inc.*, No. CIV 02 1472 PHX JWS, at *3 (D. Ariz. June 19, 2003).

[5]Judge Tashima's interpretation of *Halbert* is flawed. *Halbert* does not stand for the proposition that a district court *must always* accept a motion for leave to amend simply because the court has established a period, pursuant to Federal Rule of Civil Procedure 16(b), in which the parties may file a leave to amend. Rather, *Halbert* reiterates that granting or denying a motion for leave to amend remains within the discretion of the district court. *Halbert*, 33 F.3d at 530. In *Halbert* the Fifth Circuit did not reverse the district court because the motion for leave to amend was "presumptively timely," but rather because the district court provided no "justifying reasons" for denying the motion for leave to amend. *Id.*; *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987) (reversing district court's leave to amend ruling where the "district court denied the motion without explanation or findings.").

By the dissent's reasoning, a district court initially has the discretion to determine whether a motion for leave to amend is prejudicial, made in bad faith, would cause undue delay, or is futile under Rule 15(a); but once the district court sets a schedule for pretrial motions pursuant to Rule 16(b), the court must accept all "timely" motions filed before the court-appointed deadline.[6] Even if such a scheme made sense—if a pretrial order changed parties' expectations regarding the prospect of litigating new facts and legal theories—there is no authority stating that Rule 16(b) preempts Rule 15(a) in cases like this one.

Federal Rule of Civil Procedure 16 has no effect on the operation of Federal Rule of Civil Procedure 15(a) principles in this case. In *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992), we held that Rule 15(a) did not apply, not because Rule 15 is trumped by Rule 16 once the district court filed a pretrial scheduling order, but rather because the party in *Johnson* had failed to file his motion to join additional parties within the period of time set in the district court's scheduling order. *Id.* at 607-08. Put simply, the party could not appeal to the liberal amendment procedures afforded by Rule 15; his tardy motion had to satisfy the *more stringent* "good cause" showing required under Rule 16. In this case, AmerisourceBergen filed its motion for leave to amend within the deadline set by the district court. Accordingly, as the district court correctly recognized, AmerisourceBergen's motion is subject to the limited constraints placed on motions for leave to amend under Rule 15(a).[7]

---

[6]Judge Tashima argues that it would be pointless to create a schedule for filing pretrial motions pursuant to Federal Rule of Civil Procedure 16(b), "if the schedule can be disregarded by the court and counsel." Dissent at 17332 n.1.

[7]*AmerisourceBergen Corp., et al. v. Dialysist West, Inc.*, No. CIV-02-1472-PHXJWS, slip op. at 6 (D. Ariz. Jan. 6, 2004) ("The effect of filing a motion to amend prior to court ordered deadlines is that Rule 15(a) provides the standard of review, not the "good cause" standard articulated in Rule 16.")

Unlike the district courts in *Halbert* and *DCD Programs*,[8] the district court in this case provided sufficient "justifying reasons" for denying AmerisourceBergen's leave to amend. In a detailed order on January 6, 2004, the district court held that AmerisourceBergen's motion to amend its reply and allege that non-Epogen drugs (Procrit) that it had purchased from Dialysist West were counterfeit was both untimely and prejudicial to Dialysist West.[9]

**[7]** In assessing timeliness, we do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, we also inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388; *see also Sierra Club v. Union Oil Co. of California*, 813 F.2d 1480, 1492-93 (9th Cir. 1987), vacated on other grounds by *Union Oil Co. of California v. Sierra Club*, 485 U.S. 931 (1988). We have held that an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable. *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (citing *Jackson*, 902 F.2d at 1388).

**[8]** In this case, fifteen months passed between the time AmerisourceBergen first discovered the possibility that the Procrit was tainted and its assertion of this theory in the motion for leave to amend. Even more detrimental to AmerisourceBergen's motion for leave to amend, however, is the

---

[8]*Halbert*, 33 F.3d at 530; *DCD Programs*, 833 F.2d at 185.

[9]*AmerisourceBergen*, No. CIV-02-1472-PHXJWS, slip op. at 4-7. The district court's key holdings on the motion for leave to amend were: 1) AmerisourceBergen did not allege any "newly discovered facts" in the motion nor did the company explain why it waited over a year after filing its complaint before bringing these facts to the attention of the court; and 2) the amendments were prejudicial because they contradicted the company's "own previous admissions mid-stream," without any proffered reason.

fact that AmerisourceBergen had admitted only three months before that the products for which it had not paid Dialysist West, including Procrit, were genuine. At the time AmerisourceBergen filed its reply in May 2003, it had all the information necessary to raise the affirmative defense it now pursues: AmerisourceBergen knew about the counterfeit Procrit on the pharmaceuticals market, acknowledged that it had purchased Procrit from Dialysist West during that period, and had previously filed suit because it believed that it had purchased counterfeit drugs from Dialysist West. Although AmerisourceBergen vigorously protests the denial of its motion for leave to amend, it has never provided a satisfactory explanation of why, twelve months into the litigation, it so drastically changed its litigation theory.

**[9]** Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its "tainted product" theory in its original complaint or reply.[10] Allowing AmerisourceBergen to "advance different legal theories and require proof of different facts" at this stage in the litigation would have prejudiced Dialysist West and unfairly delayed Dialysist West's collection of a judgment worth approximately $2.2 million. *Jackson*, 902 F.2d at 1387; *see also Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (upholding district court's denial of leave to amend fraud claim where plaintiff had facts prior to first amendment and amendment was both prejudicial and dilatory); *Morongo*

---

[10]*See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990) (stating that "if [an] . . . amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").

*Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (upholding denial of leave to amend on the basis of dilatoriness and prejudice where Morongo Indians introduced new legal theory well into the litigation). AmerisourceBergen's motion to amend its reply closely followed Dialysist West's challenge to AmerisourceBergen's claim for equitable setoff and motion for final judgment under Rule 54(b) as well as the addition of seven new parties to the Epogen litigation. We will not speculate whether AmerisourceBergen's sudden change in tactics was gamesmanship or the result of an oversight by counsel, but we do conclude that the district court did not abuse its discretion in denying AmerisourceBergen's motion for leave to amend.

## C.  Certification of Final Judgment

**[10]** AmerisourceBergen also appeals the district court's certification of final judgment on Dialysist West's counterclaim under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that final entry of judgment should be made on individual claims in multiple claim suits "upon an express determination that there is no just reason for delay." Fed. R. Civ. P. 54(b). Review of a district court's certification of a final judgment involves a two-step process. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 12 (1980). In the first step, we review the district court's entry of judgment de novo and evaluate "such factors as the interrelationship of the claims so as to prevent piecemeal appeals." *See Gregorian v. Izvestia*, 871 F.2d 1515, 1519 (9th Cir. 1989). The second step of review requires an assessment of the equities. We apply the "substantial deference" standard, reversing the district court only if we find the district court's conclusions clearly unreasonable. *Id.*

**[11]** The district court found that there was no risk of duplicative effort by the courts because any subsequent judgments in this case would not vacate its judgment on Dialysist West's counterclaim. *See Curtiss-Wright*, 446 U.S. at 8 (holding that

proper factors for 54(b) review include "whether the claims for review were separable from the others . . . and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once"). We agree. Because Dialysist West's counterclaim to recover for non-Epogen sales was not legally or factually related to AmerisourceBergen's Epogen claim, no court need revisit this judgment. *See Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981).

**[12]** AmerisourceBergen contends that, as a matter of equity, the district court's certification of its judgment on Dialysist West's counterclaim should not be upheld because Dialysist West is insolvent. We recognize that insolvency is a factor that should weigh against the final entry of judgment on Dialysist West's counterclaim. *See Reiter v. Cooper*, 507 U.S. 258, 270 (1993) (acknowledging that "even a 'threat of insolvency' of the party seeking separate judgment is a factor weighing against it"). But as the Supreme Court held in *Reiter*: "[W]e cannot say that insolvency is an absolute bar [to certification]." *Id.; see also Shintom Am. Inc. v. Car Tels. Inc.*, 45 F.3d 1107, 1110 (7th Cir. 1995) (affirming district court's entry of final judgment under 54(b) despite the "precarious financial condition and potential insolvency of the plaintiff").

In weighing the equities of Rule 54(b) certification, the district court concluded that certification was warranted because this result: (1) aligned with the set-off principles of the UCC; (2) helped avoid unreasonable delay; and because (3) AmerisourceBergen owed Dialysist West approximately $2.2 million. *See AmerisourceBergen Corp.*, No. CIV-02-1472 PHX JWS, slip op. at 14-15. These factors are a sufficient basis for certifying final judgment in favor of Dialysist West. *See Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1065-1067 (7th Cir. 1987) (permitting certification where defendant filed counterclaims and plaintiff asserted defenses that were "at least plausible"); *C.R. Bard, Inc. v. Med. Elecs.*

*Corp.*, 529 F. Supp. 1382, 1388 (D. Mass. 1982) (stating that court "saw no reason why plaintiff should be denied" use of substantial funds "while awaiting disposition of . . . counterclaims"). Moreover, the district court's decision to favor Dialysist West's creditors as a matter of equity is not erroneous where AmerisourceBergen has not shown that the debt it seeks to set-off is related to Dialysist West's counterclaim. *See Newbery Corp.*, 95 F.3d at 1399 ("[S]etoffs run contrary to fundamental bankruptcy policies such as the equal treatment of creditors and the preservation of a reorganizing debtor's assets.").

**[13]** "The task of weighing and balancing the contending" equities of a case is "peculiarly one for the trial judge." *Curtiss-Wright*, 446 U.S. at 12. It is not the appellate court's role to "reweigh the equities." *Id.* at 10. The district court's conclusions for certifying the judgment were not "clearly unreasonable." We decline to vacate the certification of judgment.

## D.  Denial of Stay of Enforcement

**[14]** Federal Rule of Civil Procedure 62(h) provides that when a court has entered final judgment, it may upon its discretion, "stay enforcement of that judgment until the entering of a subsequent judgment or judgments." Fed. R. Civ. P. 62(h). AmerisourceBergen argues that the district court erred in rejecting its 62(h) motion by conflating Rule 54(b) and Rule 62(h). While it is true that the district court has discretion to grant a stay when it has already certified final judgment,[11]

---

[11]*See Curtiss-Wright*, 446 U.S. at 13 ("Under this Rule [62(h)], we assume it would be within the power of the district court to protect all parties by having the losing party deposit the amount of the judgment with the court . . . . In this way, valid considerations of economic duress and solvency . . . can be provided without preventing Rule 54(b) consideration."); *see also Reiter,* 507 U.S. at 270-271 (similarly endorsing the concept of a Rule 62(h) stay when a court certifies final judgment in favor of

we disagree with AmerisourceBergen's contention that "special circumstances" warrant a stay in this case.

**[15]** AmerisourceBergen cannot show that failure to provide the stay will cause it to suffer greater harm than Dialysist West will face should it be denied this judgment pending resolution of AmerisourceBergen's outstanding claims. *See Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.*, 840 F.2d 546, 552 (7th Cir. 1988) ("Courts regularly require the payment of undisputed debts while the parties litigate their genuine disputes."). Moreover, allowing AmerisourceBergen to obtain a stay of the judgment would effectively sanction its self-help tactics. If it does ultimately succeed on its Epogen claim, AmerisourceBergen will have avoided paying funds it owes Dialysist West and would unjustifiably leap-frog other creditors. *See Pereira v. Cogan*, 275 B.R. 472, 475 (S.D.N.Y. 2002) ("In fashioning a stay of enforcement, a court looks to general equitable principles."). The district court did not abuse its discretion in denying AmerisourceBergen's Rule 62(h) motion.[12]

---

an insolvent party). Judge Tashima extensively cites *Curtiss-Wright* and *Reiter* for the proposition that the district court abused its discretion by denying AmerisourceBergen's Rule 62(h) motion. Dissent at 17339-40. But while *Curtiss-Wright* and *Reiter* both approved (in dicta) the option of a Rule 62(h) stay when a court certifies judgment for an insolvent party, neither case suggested that a district court would abuse its discretion if it *declined* to issue a stay under these circumstances.

[12]Judge Tashima would stay enforcement of the judgment and "protect[ ] AmerisourceBergen's claims against Dialysist West's insolvency." Dissent at 17343. Section 553 of the Bankruptcy Code governs the equitable right of setoff in bankruptcy law. 11 U.S.C. § 553 (2006). Section 553, however, does not create a right of setoff: "Rather, the section merely recognizes and preserves setoff rights that exist under other applicable law. . . . Thus, the threshold determination in every case involving section 553 is the source of the alleged setoff right." 5 Myron M. Sheinfeld et al., *Collier on Bankruptcy* ¶ 553.01[2] (Lawrence P. King, ed., 15th ed. rev. 2005). AmerisourceBergen has no right to legal or equitable setoff under Arizona law for the judgment against it on the counterclaim; it therefore does not have a right to setoff under bankruptcy law. *See In re Hal, Inc.*, 196 B.R. 159, 161 (B.A.P. 9th Cir. 1996).

### E.   Attorney's Fees & Costs of Appeal

**[16]** Dialysist West seeks attorney's fees and the costs of appeal under Arizona Revised Statute section 12-341.01(A). The statute permits an award of attorney's fees to the "successful party" in "any contested action arising out of a contract." Ariz. Rev. Stat. § 12-341.01(A) (2006). An award of attorney's fees under Arizona law is permissive, rather than mandatory. *See Wagenseller v. Scottsdale Mem'l. Hosp.*, 710 P.2d 1025, 1049 (Ariz. 1985). The Arizona Supreme Court has held that there are six grounds that must be considered in awarding attorney's fees to a successful litigant including:

> (1) whether the unsuccessful party's claim or defense was meritorious; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought; (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.

*Id.* at 1049. Neither party directly addresses the *Wagenseller* factors in its briefing, but there is sufficient evidence in the record to conclude that these factors weigh against granting Dialysist West attorney's fees and costs. First, no evidence has been presented indicating that this case could have been successfully avoided or settled. Second, the issues in this appeal raise novel questions of contract law. Finally, we do not wish to discourage parties like AmerisourceBergen from

litigating opaque issues of contract law for fear of being saddled with opposing counsel's fees and costs.

**AFFIRMED.**

---

TASHIMA, Circuit Judge, dissenting:

While I agree with most of the majority's disposition of the issues raised by this appeal, I part company on two issues. I believe that the district court abused its discretion in denying AmerisourceBergen's motion for leave to amend because the motion was made well before the deadline set by the court for the making of such motions and because Dialysist West has shown absolutely no prejudice. I further believe that the district court abused its discretion in refusing to stay the judgment pursuant to Federal Rule of Civil Procedure 62(h) because it failed to perform an analysis separate from its Rule 54(b) analysis and failed to give adequate consideration to Dialysist West's insolvency. For these reasons, I respectfully dissent from Parts III.B. and III.D. of the majority opinion, and from the judgment of affirmance.

## 1.    Leave to Amend.

Federal Rule of Civil Procedure 15 provides that "leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Absent prejudice, or a "strong showing" of the other factors, such as undue delay, bad faith, or dilatory motive, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam); *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir. 1995) (stating that, although the denial of leave to amend after a responsive pleading has been filed is reviewed for an abuse of discretion, "we strictly review such denial in light of the strong policy permitting amendment"). Amend-

ments are to be permitted liberally because, as the Supreme Court observed many years ago, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

On January 16, 2003, the district court held the scheduling conference, pursuant to Federal Rule of Civil Procedure 16, and set the trial date and the deadlines for discovery and dispositive motions. On June 19, 2003, the parties filed a joint motion to extend the dates in the pretrial schedule. The district court granted the motion on July 7, 2003, and accordingly filed an order adjusting the pretrial schedule, based on the joint motion of the parties and on a showing of good cause. This order provided that the last date to file motions to amend was extended from June 2, 2003, to December 2, 2003. The order also extended the non-expert discovery cutoff date from August 1, 2003, to February 2, 2004, and for expert discovery from October 17, 2003, to April 19, 2004. The court deleted the reference to the pretrial conference, stating that it would address the final pretrial arrangements at a later date. AmerisourceBergen's motion for leave to amend was filed on August 25, 2003 — more than three months before the cutoff date for such motions and almost eight months before discovery was to be completed.

"A pretrial order controls the subsequent course of the action unless modified 'upon a showing of good cause.' " *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005) (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)), *cert. denied*, 126 S. Ct. 1470 (2006); *see also Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 245 (5th Cir. 2005) ("It goes without saying that a pre-trial order controls the scope and course of trial . . . ." ); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) ("The scheduling order 'control[s] the subsequent

course of the action' unless modified by the court.") (quoting Fed. R. Civ. P. 16(e)) (alteration in original).

We have often affirmed the denial of leave to amend when the motion was made after the cutoff date for such motions, or when discovery had closed or was about to close. For example, in *Zivkovic*, the motion to amend was filed three months after the deadline established by the court and only five days before discovery was to be completed. We concluded that, under those circumstances, the district court did not abuse its discretion in denying the motion to amend. *Zivkovic*, 302 F.3d at 1087; *see also, e.g.*, *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983, 986 (9th Cir. 1999) (where the motion to amend was made more than four months after the cutoff date for motions to amend, stating that "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint"); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming the denial of leave to amend where the motion was made "on the eve of the discovery deadline").

Our jurisprudence thus establishes that where a motion to amend the pleadings is made within the time established by the pretrial scheduling order for the making of such motions, the motion is presumptively timely. Otherwise, it would be a pointless exercise to establish cutoff dates in a Rule 16 scheduling order.[1] Here, the motion to amend was made more than three months before the motion cutoff date; thus, "on its face, the motion was timely." *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994). Moreover, eight months remained before the completion of discovery.

---

[1] What would be the point, for example, of the rule's requirement that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district court," Fed. R. Civ. P. 16(b), if the schedule can be disregarded by the court and counsel.

The majority has cited no case in which a motion to amend was made within the deadline set by the district court and yet denied as untimely. Indeed, such a case would be difficult to find because common sense and Rule 16 dictate that a motion filed "well within the . . . scheduling order deadline for the amendment of pleadings" is timely "on its face." *Id.*

Contrary to the majority's assertion, taking into account the fact that the motion was presumptively timely does not force the district court to "accept all 'timely' motions filed before the court-appointed deadline."[2] Maj. Op. at 17322. In fact, the remaining factors, including prejudice and bad faith, remain to be assessed. Given the undeniable conclusion that the motion was presumptively timely, it remains for Dialysist West to establish prejudice sufficient to overcome the presumption under Rule 15(a) in favor of granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

In *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987), we reversed the district court's denial of the plaintiffs' motion to file a fourth amended complaint. *Id.* at 190. We rejected the defendant's argument that it would be prejudiced by the delay in naming it to the suit, stating that, "[g]iven that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [the defendant] would be prejudiced by the timing of the proposed amendment." *Id.* at 187-88.

The Eighth Circuit similarly has relied on the fact that trial was nearly three months away in concluding that the district court abused its discretion in denying leave to amend an answer. *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 526 (8th Cir. 2000); *see also Halbert*, 33 F.3d at 530 (concluding that the district court erred in denying "the facially valid motion to amend," where the motion to amend was

---

[2]The majority's use of quotation marks around "timely" is disingenuous; there is absolutely no question that the motion to amend was timely.

made four months before the scheduling order deadline). The court reasoned that, although discovery had closed, the district court had discretion to reopen it for the limited purpose of exploring the additional defense raised by the amendment, noting that "an 'adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.' " *Dennis*, 207 F.3d at 526 (quoting *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989)). The court further reasoned that the three months remaining until trial was ample time to conduct any further discovery that may have been required. *Id.*

Similar to *DCD*, the trial date in the instant case had not even been set at the time AmerisourceBergen filed its motion to amend. The district court already had found that there was good cause to modify the pretrial schedule, giving the parties six additional months to file motions to amend, to complete discovery, and to file dispositive motions. AmerisourceBergen's motion was filed less than two months after the court had modified the schedule, and well before the deadline established by the modified schedule. Thus, this case falls squarely within the reasoning of *DCD*, *Dennis*, and *Halbert*.

The majority asserts that this case is distinguishable from *DCD* and *Halbert* because the district court provided sufficient reasons to justify the denial of the leave to amend. Maj. op. at 17323. The district court relied primarily on a finding of prejudice to Dialysist West in denying the motion to amend, but the court did not explain how Dialysist West would be prejudiced. We have noted that "[b]ald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to 'facilitate a proper disposition on the merits.' " *Hurn v. Ret. Fund Trust of the Plumbing, Heating & Piping Indus.*, 648 F.2d 1252, 1254 (9th Cir. 1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)); *see also Eminence Capital*, 316 F.3d at 1052 ("A simple denial of leave to amend without any explanation by the district court is subject to reversal. Such a

judgment is 'not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.' " (quoting *Foman*, 371 U.S. at 182)).

The majority asserts that the proposed amendment would have imposed "potentially high, additional litigation costs on Dialysist West."[3] Maj. op. at 17324. AmerisourceBergen disputes the district court's statement that the parties agreed that the proposed amendment would require further discovery.[4] Even if further discovery were required, however, nearly eight months remained before the discovery cutoff date — a deadline based on the parties' own stipulation. Given that the parties had agreed on this schedule, it is difficult to understand how Dialysist West could have been prejudiced, even if further discovery were required.

The reason the majority gives for the potential additional litigation costs is that AmerisourceBergen "drastically changed its litigation theory." Maj. op. at 17324. Yet AmerisourceBergen alleged in its proposed amendment that it purchased both Epogen and Procrit from Dialysist West, the two are identical drugs, they are manufactured by the same company, although Procrit is marketed by a different company, and both drugs were the subject of announcements regarding counterfeit products. The assertion that the addition of the Procrit claim constitutes a drastic change in AmerisourceBergen's litigation theory is thus not supported by the record.

Dialysist West bore the burden of showing that it would be prejudiced by the proposed amendment. *See Eminence Capi-*

---

[3]There is no denying that litigation costs today are high. But if the "high cost" of additional litigation were a sufficient showing of prejudice, then virtually all but the most innocuous amendments could be denied as "prejudicial." This surely cannot be the standard for denying leave to amend.

[4]In its memorandum in support of its motion to amend, AmerisourceBergen disputed Dialysist West's assertions regarding the need for further discovery that would arise from the proposed amendment.

*tal*, 316 F.3d at 1052. Dialysist West did not contend, and the district court did not find, that any additional discovery that might have been required could not have been completed within the time remaining before the discovery cutoff date. The need to undertake additional discovery cannot be classified as prejudice so long as ample time remains, as it did in this case, to complete that discovery before the discovery cutoff date. *See, e.g.*, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 206 (3d Cir. 2006) (finding no prejudice where the plaintiff's proposed amendment was filed eleven months after the original complaint, reasoning that the defendant "had not argued that the delay impaired its ability to defend against the suit or that it 'was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendment [ ] been timely' ") (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)) (alterations in original); *Dennis*, 207 F.3d at 526 (stating that the mere fact that an adverse party must undertake discovery does not suffice to warrant denying a motion to amend); *DCD*, 833 F.2d at 188 (reasoning that, because the case was at the discovery stage, there was no evidence of prejudice). After all, discovery is an ordinary incident and burden of litigation sanctioned by the Federal Rules of Civil Procedure. I thus disagree with the majority's characterization of the need to conduct discovery as prejudicial. The majority simply misunderstands the meaning of "prejudice" in this context — or willfully misapplies it.

As in *DCD* and *Dennis*, I would therefore hold that Dialysist West has failed to demonstrate any prejudice from the proposed amendment, let alone prejudice sufficient to overcome the presumption in favor of granting leave to amend. *See, e.g.*, *Adam v. Hawaii*, 235 F.3d 1160, 1164 (9th Cir. 2001) (concluding that the district court erred by denying the motion to amend where the defendants failed to identify any prejudice they would suffer from the amendment and "at this point in the proceedings, there has been no discovery, nor has a trial date been set"), *overruled on other grounds by Green*

*v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001) (en banc); *S.S. Silberblatt, Inc. v. E. Harlem Pilot Bock Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42-43 (2d Cir. 1979) (reversing the denial of the appellant's motion for leave to amend, rejecting the appellee's argument that it would suffer undue prejudice because of the extensive discovery that would be required, stating that this was insufficient to overcome the policy in favor of permitting amendment, "particularly when trial has not yet commenced and is not likely to do so for some time").

The district court also stated that AmerisourceBergen's proposed amendment sought to contradict established facts of the case. The majority similarly relies on this reasoning. *See* Maj. Op. at 17323-24. But this is the very nature and purpose of an amendment. " '[A]n amended pleading supersedes the original.' " *Armstrong v. Davis*, 275 F.3d 849, 878 n.40 (9th Cir. 2001) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989)) (alteration in the original). Thus, although "a statement in a complaint may serve as a judicial admission," the admission is no longer binding if the party subsequently amends the pleading. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995); *see also, e.g.*, *188 LLC v. Trinity Indus.*, 300 F.3d 730, 736 (7th Cir. 2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."); 3 James Wm. Moore et al., Moore's Federal Practice § 15.17[3] (3d ed. 2005) (stating that, "in the more usual scenario, a court may permit a party amending a pleading to withdraw an admission contained in the original pleading"). I therefore disagree with the majority that "the district court . . . provided sufficient 'justifying reasons' for denying AmerisourceBergen's leave to amend." Maj. op. at 17323.

Finally, the majority asserts that permitting the amendment "would have unfairly delayed Dialysist West's collection of a judgment worth over $2.2 million." Maj. op. at 17324-25.

There is nothing in the record, however, to support the assertion that final judgment would have been unnecessarily delayed. The pretrial conference date had previously been vacated and no trial date had been set, and there was ample time left before the discovery cutoff date to conduct any necessary discovery. Thus, nothing in this record supports the majority's assertion of unnecessary delay.

The district court abused its discretion in denying AmerisourceBergen's timely motion to amend in the absence of any showing of prejudice by Dialysist West.

## 2. Stay of the Judgment.

I also believe that the district court abused its discretion in denying AmerisourceBergen's motion to stay the judgment pursuant to Rule 62(h). After directing entry of final judgment pursuant to Rule 54(b) against AmerisourceBergen on Dialysist West's second claim for relief in its counterclaim, the district court denied AmerisourceBergen's motion to stay the judgment pursuant to Rule 62(h). To support its order, the district court stated only that AmerisourceBergen's motion was based on Dialysist West's insolvency, and that it had considered the issue in its prior order and found the argument unpersuasive. But the insolvency analysis under Rule 62(h) is different from the insolvency analysis under Rule 54(b), and the district court did not make that analysis.

This case involved several claims and counterclaims. The district court directed entry of judgment on the pleadings with respect to Dialysist West's second claim for relief in its counterclaim, related to non-Epogen products. Still at issue are AmerisourceBergen's claims regarding Epogen and Dialysist West's first claim for relief. Although the district court ruled against AmerisourceBergen on the set-off issue, AmerisourceBergen's claim regarding the counterfeit Epogen remains. AmerisourceBergen argued below that enforcement of the judgment should be stayed because of Dialysist West's insol-

vency. The district court docket indicates that Dialysist West had, in fact, filed for bankruptcy as of May 2004.

In *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980), the Supreme Court examined the district court's entry of final judgment under Rule 54(b), in favor of Curtiss-Wright, on some of the claims in a multi-claim suit. The district court's entry of judgment was based, in part, on the fact that the litigation on the remaining claims would continue for months, if not years, and on the determination that both litigants were financially sound. The Supreme Court agreed that, although General Electric's pending counterclaims created the possibility of a set-off against the amount it owed Curtiss-Wright, Curtiss-Wright was financially sound and would be able to satisfy any judgment on the counterclaims. *Id.* at 11-12. The Court further stated that, "if Curtiss-Wright were under a threat of insolvency, that factor alone would weigh *against* qualifying" because the threat alone would cast doubt on Curtiss-Wright's ability to satisfy any counterclaims, if General Electric were to prevail. *Id.* at 12. The Court noted that Rule 62(h) would allow the district court to protect the parties by having the losing party deposit the amount of the judgment with the court, such that "valid considerations of economic duress and solvency, which do not affect the juridical considerations involved in a Rule 54(b) determination, can be provided for without preventing Rule 54(b) certification." *Id.* at 13 n.3.

The Supreme Court again cited the threat of insolvency in *Reiter v. Cooper*, 507 U.S. 258 (1993), in which the issue was whether, "when a shipper defends against a motor common carrier's suit to collect tariff rates with the claim that the tariff rates were unreasonable, the court should proceed immediately to judgment on the carrier's complaint without waiting for the Interstate Commerce Commission . . . to rule on the reasonableness issue." *Id.* at 260. The Court concluded that the "ordinary rules governing counterclaims" applied and stated that, "[i]n the ordinary case, where a carrier is solvent

and has promptly initiated suit, the equities favor separate judgment on the principal claim." *Id.* at 270. The equities to be balanced in a Rule 54(b) consideration "change, however, when the suing carrier is in bankruptcy." *Id.* Although insolvency is not an "absolute bar" to Rule 54(b) certification, the Court reasoned that a district court could protect against the threat of insolvency by entering separate judgment but staying enforcement of the judgment under Rule 62(h). *Id.* at 270-71. *Curtiss-Wright* and *Reiter* thus indicate that, although entry of a final judgment under Rule 54(b) may be proper, the district court should rely on Rule 62(h) to protect the parties when there are "valid considerations of economic duress and solvency." *Curtiss-Wright*, 446 U.S. at 13 n.3; *see Pereira v. Cogan*, 275 B.R. 472, 475 (S.D.N.Y. 2002) (" '[t]he Supreme Court has suggested that where Rule 54(b) certification is appropriate, courts can protect all parties against the uncertainties posed by the possibility of a large setoff and by the possibility of the insolvency of a judgment debtor' " by staying enforcement pursuant to Rule 62(h) and having the losing party deposit the amount of the judgment with the court) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 270, 274 (S.D.N.Y. 1995)).

The district court here denied AmerisourceBergen's motion to stay enforcement of the judgment without any discussion, stating only that it had considered AmerisourceBergen's argument regarding Dialysist West's insolvency when it granted Dialysist West's motion for judgment on the pleadings, and citing its prior order. But the discussion cited by the district court regarding Dialysist West's "alleged threat of insolvency" was made in the context of AmerisourceBergen's argument that it was entitled to equitable set-off because of Dialysist West's insolvency, which is a completely different question from that raised by the motion under Rule 62(h).

AmerisourceBergen sought a stay of the enforcement of the judgment because of Dialysist West's undisputed insolvency and the claims that remained to be resolved. The Supreme

Court's references to Rule 62(h) in *Curtiss-Wright* and *Reiter* indicate that the instant case presents exactly the type of situation in which a stay of the enforcement of the judgment is appropriate. For example, in a case similar to the instant case that involved multiple claims and counterclaims, the First Circuit reasoned that, unlike *Curtiss-Wright*, the plaintiff "would likely be left with no way to collect" if it established its claims, because the defendant was insolvent. *ITV Direct, Inc. v. Healthy Solutions, LLC*, 445 F.3d 66, 73 (1st Cir. 2006). Nonetheless, the court affirmed the district court's entry of judgment under Rule 54(b) because the plaintiff had dismissed its claims, but noted that the plaintiff "was not compelled to dismiss its claims against [the defendant] simply because the district court ruled against it on the 54(b) certification," citing Rule 62(h). *Id.*; *see also, e.g.*, *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1066 (7th Cir. 1987) (affirming the entry of final judgment under Rule 54(b) despite a remaining counterclaim, but noting that "enforcement might have been stayed under appropriate conditions under Rule 62(h)," although the party did not make such a claim); *Navajo Tribe of Indians v. United States*, 364 F.2d 320, 347 (Ct. Cl. 1966) (holding that, although the plaintiff was entitled to entry of a separate final judgment, payment of the judgment should be stayed pursuant to Rule 62(h) because the validity of the defendant's counterclaim had not yet been determined); *EMI Music Mktg. v. Avatar Records, Inc.*, 317 F. Supp. 2d 412, 424-25 (S.D.N.Y. 2004) (directing the entry of final judgment pursuant to Rule 54(b) but staying enforcement of the judgment because of the claims and counterclaims that remained to be resolved and the possibility that the judgment might be reduced if the defendant prevailed on its counterclaims).

The majority reasons that staying the judgment would "effectively sanction" AmerisourceBergen's "self-help tactics" because, if it succeeds on its Epogen claim, it "will have avoided paying funds it owes Dialysist West and would unjustifiably leap-frog other creditors." Maj. op. at 17328.

AmerisourceBergen cannot continue to litigate its Epogen claim, however, because Dialysist West has filed for bankruptcy and, pursuant to 11 U.S.C. § 362(a)(1), the case has been stayed by the district court. *See* 11 U.S.C. § 362(a) (stating that a bankruptcy petition operates as a stay of, *inter alia*, the continuation of a judicial proceeding against the debtor that was commenced prior to the bankruptcy filing); *McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1077 (9th Cir. 2000) (explaining that the automatic stay under § 362 enjoins the continuation of any judicial proceedings against the debtor and the enforcement of prior judgments). Furthermore, even if AmerisourceBergen were permitted by the bankruptcy court to proceed with its action and then succeed on its Epogen claim, it still would be prohibited from enforcing its judgment by the automatic stay. *See* 11 U.S.C. § 362(a) (further stating that the bankruptcy petition stays a proceeding to recover a claim against the debtor that arose before the commencement of the bankruptcy case); *Delpit v. Comm'r*, 18 F.3d 768, 772 (9th Cir. 1994) (stating that "a creditor's attempt to enforce a pre-bankruptcy judgment outside of Bankruptcy Court would violate *four* provisions of Section 362 simultaneously"). AmerisourceBergen would simply become an unsecured creditor, in line with Dialysist West's other unsecured creditors. *Cf. Shoen v. Shoen (In re Shoen)*, 176 F.3d 1150, 1153 n.1 (9th Cir. 1999) (McKeown, J., dissenting) (stating that there was no dispute that the appellees, "as judgment creditors, but not lien creditors, hold unsecured claims"). Thus, contrary to the majority's assertion, maj. op. at 17328, AmerisourceBergen is prevented by the Bankruptcy Code from "leap-frogging" Dialysist West's other creditors.

As discussed *supra*, *Curtiss-Wright* and *Reiter* indicate that, when multiple claims and counterclaims are involved, and the district court grants certification under Rule 54(b), "valid considerations of economic duress and solvency" can be addressed by the use of Rule 62(h) to "protect all parties." *Curtiss-Wright*, 446 U.S. at 13 n.3. When Dialysist West filed

for bankruptcy, the judgment awarded on its second counter-claim became the property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (describing property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case"); Myron M. Shein-feld et al., 3 Collier on Bankruptcy ¶ 541.08[5] (Lawrence P. King, ed., 15th ed. rev. 2005) ("Where a cause of action belonging to the debtor has been merged into judgment prior to bankruptcy, the estate succeeds to all rights under such judgment."). Staying enforcement of the judgment would not have allowed AmerisourceBergen to avoid payment of the judgment and step in line ahead of other creditors; the Bank-ruptcy Code provides numerous protections of the property of the estate, such as the automatic stay and the avoidance of fraudulent or preferential transfers. Rather, a stay would have served the purpose contemplated by the Supreme Court in *Curtiss-Wright* of protecting AmerisourceBergen's claims against Dialysist West's insolvency.[5]

Because the district court failed to conduct any analysis of AmerisourceBergen's Rule 62(h) motion and did not consider the effect of Dialysist West's insolvency on its ability to sat-isfy any claims of AmerisourceBergen, I believe that the court abused its discretion in denying the Rule 62(h) motion.

---

[5]The majority apparently believes that the only right of Amerisource-Bergen protectable by a stay is its equitable right of setoff. Maj. op. at 17328 n.12. This narrow focus, however, ignores that if the district court had allowed AmerisourceBergen to amend its reply, as I believe it should have, Dialysist West would not have been entitled to judgment on the pleadings on its second counterclaim because AmerisourceBergen would have been able to dispute the genuineness of the non-Epogen products on which that claim was based. Thus, the majority's assumption that Ameri-sourceBergen's only right to payment from Dialysist West was based on setoff is incorrect. AmerisourceBergen's own claims against Dialysist West remained and still remain undetermined, and its ability to collect on those claims, should it ultimately prevail, is jeopardized by Dialysist West's bankruptcy.

For the foregoing reasons, I would reverse the judgment of the district court. I respectfully dissent.