REINHARDT, Circuit Judge,
dissenting in part:
I dissent in part because the plaintiffs must be granted leave to amend the complaint with respect to their preemption claim.[1] “[I]n a line of cases stretching back nearly 50 [now 65] years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), ‘a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.’ ” Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.2000) (emphasis added) (citations omitted); see also Sharkey v. O’Neal, 778 F.3d 767, 774 (9th Cir.2015). In my view, the defects in plaintiffs’ preemption claim could be cured by amendment, and the majority’s other suggested reasons for affirming the denial of leave to amend are also without merit.
The majority first states in dictum that the issue of the denial of leave to amend the complaint may have been waived. As the foregoing statement of the law regarding dismissals with prejudice makes clear, however, whether the plaintiffs asked the *1148 district court for leave to amend is irrelevant. The majority incorrectly suggests that Alaska v. United States, 201 F.3d 1154, 1163-64 (9th Cir.2000), broadly held that a party cannot raise the issue for the first time on appeal, Maj. Op. at 1144-45, but that case neither considered nor abrogated our longstanding rule regarding dismissals under Rule 12(b)(6). Rather, it merely held that the government could not seek to amend its answer to the complaint on appeal from judgment on the pleadings where it had intentionally adopted its answer as a strategic litigating position. See Alaska, 201 F.3d at 1163. In so doing, Alaska relied on cases holding that a party cannot wait until an appeal of summary judgment to seek leave to amend a pleading, id. at 1163-64 — a rule that makes sense in light of the time and expense that a disposition at that stage entails. By contrast, there is a strong presumption that a plaintiff with a plausible legal claim who simply fails to master the art of the well-pleaded complaint must be allowed to cure pleading defects — whether or not it makes a request to do so before the district court.
The majority also alludes in dictum to the fact that the plaintiffs voluntarily amended their complaint on one prior occasion and that it has been three years since the original complaint • was filed. True, the presumption that a dismissal should be without prejudice may be rebutted by a finding of “undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment.... ” Sharkey, 778 F.3d at 774 (internal citation and quotations marks omitted). However, absent prejudice to the opposing party — which the district court did not find and the defendants do not assert — there must be a “strong showing” of one of the other factors to justify a dismissal with prejudice. Id. (emphasis added and citation omitted). A single, good-faith prior amendment of the complaint cannot satisfy this high bar. Nor can the mere passage of time.[2] More important, the district court relied solely on the purported futility of an amendment. We cannot affirm based on a finding of repeated failure to cure or undue delay that the district court did not make. See id. (holding that the district court must provide an explanation for dismissal with prejudice).
Nor are the majority and the district court correct that the plaintiffs’ pleading defects could not possibly be cured by amendment. I agree that the plaintiffs’ complaint as currently drafted fails to “identify any actual conflict between” the Shark Fin Law and “the federal government’s authority under the [Magnuson-Stevens Act] to manage shark fishing in the [exclusive economic zone].” Maj. Op. at 1142 (quotation marks omitted). It includes nothing beyond “mere conclusory statements,” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), that the Shark Fin Law conflicts with “the [Magnuson-Stevens Act], federal implementing regulations and federal [Fisheries Management Plans].” First Amended Complaint for Declaratory and Injunctive Relief at 12 ¶ 57, Chinatown Neighborhood Ass’n v. Harris, No. CV *1149 1203759 WHO (N.D. Cal. Dec. 9, 2013). However, the plaintiffs assert that, if permitted to amend the complaint, they could plead additional facts demonstrating that (1) the federal government has adopted specific quotas for shark fishing pursuant to the optimum yield provisions of the Magnuson-Stevens Act and that (2) the Shark Fin Law poses an obstacle to achievement of those quotas because it significantly reduces otherwise legal shark fishing.[3] As outlined below, if such facts were properly pleaded, this would constitute a plausible claim for relief.
As relevant here, conflict preemption occurs where “the challenged state law ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,’ ” Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012), including where it “would interfere with the careful balance struck by Congress,” id. at 2505. A central purpose and objective of the Magnuson-Stevens Act is to “achieve and maintain, on a continuing basis, the optimum yield from each fishery,” 16 U.S.C. § 1801(b)(4), which is the “amount of fish which — (A) will provide the greatest overall benefit to the Nation, particularly with respect to food production and recreational opportunities, and taking into account the protection of marine ecosystems; [and] (B) is prescribed on the basis of the maximum sustainable yield from the fishery-” Id. § 1802(33). As the majority explains, the Magnuson-Stevens Act creates a framework under which regional Fishery Management Councils comprised of federal and state stakeholders collaborate to adopt Fishery Management Plans designed to achieve optimum yield. Id. § 1851(a). In short, Fishery Management Plans seek to maximize the commercial and recreational benefits of fisheries in the exclusive economic zone without compromising the long-term sustainability of them. See id.; Natural Res. Def. Council, Inc. v. Daley, 209 F.3d 747, 753 (D.C.Cir. 2000).
One of the things a Fishery Management Plan may do to achieve optimum yield is establish a quota for the amount of a particular species of fish that should be caught. A plaintiff states a cognizable preemption claim where a Fishery Management Plan has established such a quota and a state law interferes with the achievement of that quota. Se. Fisheries Ass’n v. Chiles, 979 F.2d 1504, 1510 (11th Cir.1992) (holding that the plaintiffs stated a cognizable preemption claim where a Fishery Management Plan established an annual quota for the total catch of Spanish Mackerel while state law established a daily limit on the number of Spanish Mackerel that a commercial vessel could bring into a state port). Notwithstanding the majority’s statement to the contrary, the Magnu-son-Stevens Act provision that preserves a state’s “jurisdiction or authority ... within its boundaries,” 16 U.S.C. § 1856(a)(1) (emphasis added), does not authorize a state to adopt laws that pose an obstacle to the federal government’s authority to manage and maximize the productivity of fisheries within its own respective territory, see id. § 1811(a) (“the United States claims, and will exercise ... sovereign rights and exclusive fishery management authority over all fish ... within the exclusive economic zone.”). See also City of Charleston v. A Fisherman’s Best, 310 F.3d 155, 174-76, 179 (4th Cir.2002) (holding that city resolution banning vessels that use longline tackle from docking at city marina was preempted by Fishery Management Plan designating “longline” *1150 as the authorized gear for catching swordfish).
Although the plaintiffs’ pleadings as presently drafted fail to point to a Fishery Management Plan regulating sharks or setting a shark quota, at oral argument defendants and their amicus curiae admitted that there are a number of Fishery Management Plans in place around the country that do so. Even if those Fishery .Management Plans are silent with regard to the sale of shark fins (as the defendants and their amici represented at oral argument), the plaintiffs could establish that the Shark Fin Law is preempted by adducing clear evidence that it poses an obstacle to the achievement of an optimum yield of sharks specified in an Fishery Management Plan because it results in a significant decrease in otherwise legal shark fishing. The plaintiffs asserted at oral argument that if permitted to amend their complaint, they would provide additional facts demonstrating that the number of sharks caught in the exclusive economic zone has dropped significantly and that they have lost millions in revenue due to the Shark Fin Law.[4] If the fin is the main part of a shark that has commercial value and thus California fishermen largely cease catching sharks in exclusive economic zone fisheries, the federal objective of achieving optimum yield might be unconstitutionally impaired by the state’s ban on the sale of fins — i.e., the balance between conservation and economic interests struck by the Fishery Management Council in adopting a quota could be upset. While I express no opinion on the likelihood that such a claim would ultimately succeed on the merits, the command that “leave to amend shall be freely given” requires that the plaintiffs at least be given a chance to adequately plead their claim. Sharkey, 778 F.Bd at 774 (citation omitted).
Finally, the majority’s assertion that in dismissing the complaint with prejudice the district court properly relied on a representation by the plaintiffs that amendment would be futile is erroneous. The comment on which the majority and the district court rely is ambiguous at best. In response to the district court’s inquiry, “you’ve got the complaint where you want it ... ?”, plaintiffs’ counsel responded “you are correct.” Counsel likely meant only that he believed that he had made sufficient averments to support the claims at the motion to dismiss stage, as the district court’s inquiry followed counsel’s lengthy argument to that effect. This is different from a representation that should the district court conclude that the allegations in the complaint were insufficient, the plaintiffs could not provide further allegations. The district court and the majority err by *1151 treating counsel’s ambiguous representation as sufficient to dislodge “the presumption in favor of granting leave to amend.” Id. It would have taken little effort by the district court to clarify the matter before permanently depriving the plaintiffs of an opportunity to pursue their case.
I respectfully dissent.

. The plaintiffs do not contest the denial of leave to amend with respect to their Commerce Clause claim on this appeal.

. This case is not akin to AmerisourceBergen Corp. v. Dialysist W., Inc., cited by the majority, in which the district court found that the defendant would be prejudiced by the plaintiffs attempt "twelve months into the litigation, ... [to] drastically change[ ] its litigation theory” without explanation. 465 F.3d 946, 953 (9th Cir.2006). As explained below, the problem with the operative complaint in this case could be cured by the pleading of additional facts; unlike in AmerisourceBergen, the plaintiffs do not seek to change their strategy altogether.

. Federal law bans the inhumane practice of shark finning- — of removing the fin from a shark on a boat — but it does not prohibit the landing of an intact shark carcass or the subsequent detachment and sale of a fin. See 16 U.S.C. § 1857(1)(P).

. The plaintiffs did not, as the majority contends, concede that "there are commercially viable uses for sharks besides their detached fins.” Maj. Op. at 1145. The majority improperly relies on two statements in the record to hold that the plaintiffs conceded the matter. First, it cites plaintiffs’ counsel’s statement at oral argument that a letter from the Director of the California Department of Fish and Wildlife was not a "big deal.” That letter states that “revenue from the sale of sharks harvested in federal waters off California derives mostly from the sale of the meat of the shark, not from the sale of fins after the shark is legally harvested and landed with fins naturally attached.” Although that'assertion may indeed prove true, our job at the motion to dismiss stage is to test the sufficiency of the plaintiffs’ allegations. We cannot simply accept as true a state government official’s position regarding a factual matter.
Second, the majority relies on a footnote in the operative complaint stating that ”[t]he use of approximately 95% of any legally fished shark ... is still permitted.” This statement, however, says nothing about the relative commercial value of the parts of a shark or whether the ban on the sale of sharks is an obstacle to the achievement of optimum yield — matters that involve factual questions that cannot be decided against the plaintiffs at the motion to dismiss stage.